133 Ga. App. 102 (1974)
210 S.E.2d 24
J. W. A.
v.
STATE OF GEORGIA.
49347.
Court of Appeals of Georgia.
Argued May 6, 1974.
Decided September 20, 1974.
Rehearing Denied October 24, 1974.
Greer, Sartain & Carey, R. Thomas Jarrard, for appellant.
Jeff C. Wayne, District Attorney, Kenneth R. Keene, for appellee.
Barry B. McGough, John L. Cromartie, Jr., amicus curiae.
QUILLIAN, Judge.
Error is assigned to the action of the trial judge in transferring this case from the juvenile court to the superior court. The juvenile in this case has been indicted by the grand jury for arson. The facts are thus identical to those in J. E. v. State of Ga., 127 Ga. App. 589, 590 (194 *103 SE2d 288) (decided Nov. 17, 1972), where this court held: "A reversal of the juvenile court for erroneous transfer would be a useless act since the superior court has independently exercised its constitutional jurisdiction in receiving the indictment for trial." This court in that case gave full consideration to the 1971 Juvenile Court Code of Georgia and especially to Code Ann. § 24A-2501 (Ga. L. 1971, pp. 709, 736).
The Constitutional Amendment to Article VI, Section IV, Paragraph I (Code Ann. § 2-3901) adopted November 7, 1972 sets out in the resolution the following: "Proposing an amendment to the Constitution so as to provide for concurrent jurisdiction over juvenile offenders in the superior and juvenile courts." Ga. L. 1972, p. 1544. (Emphasis supplied.) Georgia L. 1973, pp. 882, 883, although superseding Code Ann. § 24A-301 (Ga. L. 1971, pp. 709, 712) contains substantially identical language to that found in the 1971 Act with regard to the jurisdiction of the Juvenile Courts. It reads: "The court shall have exclusive original jurisdiction over juvenile matters and shall be the sole court for initiating action: (1) Concerning any child; (A) who is alleged to be delinquent ..." Under Code Ann. § 24A-401 (Ga. L. 1971, pp. 709, 713; 1973, p. 579; 1973, pp. 882, 884), "delinquent act" is defined as: "an act designated a crime by laws of Georgia."
In Mathis v. State, 231 Ga. 401 (5) (202 SE2d 73), it was contended that the proceedings in the juvenile court certifying the appellant to the superior court did not meet the requirements of the law and that the superior court did not have jurisdiction to try him for the offenses charged. The Supreme Court held: "The superior court has constitutional jurisdiction to try a person accused of a felony if he has reached the age of criminal responsibility. Nothing in the Juvenile Court Code or in the proceedings of a juvenile court can abrogate this jurisdiction." P. 404. In construing the constitutional amendment, the Supreme Court pointed out that such amendment "only provides that the jurisdiction of the superior courts over juvenile felony offenders is not exclusive, `in the case of juvenile offenders as provided by law.'" P. 405. The Act of 1973 (Ga. L. 1973, p. 882 *104 et seq.) insofar as it might conflict with the 1972 Constitutional Amendment must yield to such paramount authority. The rulings in the J. E. case, supra, and the Mathis case, supra, are controlling here.
Judgment affirmed. Bell, C. J., Eberhardt, P. J., Pannell, P. J., Stolz and Webb, JJ., concur. Deen and Evans, JJ., concur specially. Clark, J., dissents.
DEEN, Judge., concurring specially.
Were it not for Mathis v. State, 231 Ga. 401 (197 SE2d 73), after the juvenile court took jurisdiction it would have to retain it unless the statute was followed in transferring it to the superior court. As I understand the constitutional amendment, it simply gave the juvenile court and the superior court concurrent jurisdiction over juvenile felonies, whereas before that the superior court had had exclusive felony jurisdiction. It also (by saying "as provided by law") gave the legislature the authority to say under what terms such transfer could be made. The legislature did this under Code Ann. § 24A-2501.
The general rule is that the court first taking jurisdiction of a question, where two courts have concurrent jurisdiction, will retain it. Hardeman & Sparks v. Battersby, 53 Ga. 36; McCord v. Walton, 192 Ga. 279 (14 SE2d 723). Applying the rule, it was held in Breeden v. Breeden, 202 Ga. 740 (44 SE2d 667), that where the superior court had obtained custody jurisdiction in a divorce action the plaintiff could not dismiss and sue out a habeas corpus in the court of ordinary.
In Carstarphen v. Dayton, 222 Ga. 138 (149 SE2d *105 103), the juvenile court took first jurisdiction of a custody matter. A habeas corpus was brought in the superior court thereafter, by one not a party to the juvenile court case. It was held that "since the juvenile court first assumed jurisdiction of the subject matter and expressly retained jurisdiction we agree that the superior court should not determine the issues." Superior court action ordered transferred to juvenile court.
I conclude from all this that the juvenile court, which first took jurisdiction (the juvenile court and the superior court having concurrent jurisdiction over the juvenile accused of a felony) should retain it unless the transfer is pursuant to the hearing required by Code § 24A-2501.
But as I read Mathis, a contrary decision was arrived at, where the Supreme Court simply said the indictment was good, without deciding whether the juvenile court which originally took jurisdiction held a proper hearing or not. I think we are bound by Mathis. Therefore, the pending indictment renders this case moot and it should be dismissed.
I am authorized to state that Judge Evans joins in this special concurrence.
CLARK, Judge, dissenting.
Although I recognize the majority opinion is dispositive of the legal question presented, I find it necessary to enlarge upon the facts in order to express my dissenting views.
The record begins with a petition filed December 20, 1973 for an adjudicatory hearing in the Juvenile Court of White County under the provisions of Code Ann. § 24A-2201 (Ga. L. 1971, pp. 709, 732). In part this petition alleges "1. That said child is delinquent, unruly, deprived. 2. Arson and that said child is in need of supervision, treatment and rehabilitation, that it is in the best interest of the child and the public that this proceeding be brought." The petition further adds with reference to the arson allegation that "Said youth along with three adults did set fire to the Blue Creek Baptist Church in White County, Georgia." Our record does not show written notice of the time, place and purpose of this *106 hearing to have been given the child or his mother (the sole surviving parent) as required by Code Ann. § 24A-2501 (a, 2). It should be noted, however, that at the adjudicatory hearing on this petition held January 16, 1974 the juvenile was capably represented by court appointed counsel who has brought the instant appeal.
The hearing transcript shows that at its conclusion the able superior court judge serving as judge of the Juvenile Court of White County stated "I am still going to have to look into this question of whether the district attorney wants to treat it as a grand jury matter or whether it is a juvenile question, and I think we just better have a conference around here in the next day or two and we will get the district attorney to decide what to do about it ..." (T. 32). In the court's order entered that same day transferring the matter to the superior court there are recited the factual findings including a statement that "this matter should be transferred to the office of the district attorney for presentation to the White County Superior Court for disposition." (R. 4). It is from this judgment of January 16, 1974, that the juvenile's notice of appeal was filed on February 13, 1974. Thereafter the juvenile was jointly indicted with three adults at the April Term for arson. This indictment was then added to the record in this court followed by a motion from the state that the juvenile court's transfer judgment from which appeal has been taken should be considered moot.
The filing of the indictment and the motion for dismissal based upon mootness transformed the nature of this appeal. Instead of our consideration being limited to the legal validity of the juvenile court proceedings we must decide if a subsequent indictment in the superior court operates ipso facto to deprive the juvenile court of its previously obtained jurisdiction over the juvenile.
It is clear under our decision in Reed v. State of Ga., 125 Ga. App. 568 (188 SE2d 392) that the transfer judgment standing alone was erroneous because the instant adjudicatory hearing was held without meeting the statutory service requirements which must be shown before there can be a transfer of a criminal case from the juvenile court to other courts. We there noted the *107 Juvenile Court Code required "notice in writing of the time, place and purpose of the hearing is [to be] given to the child and his parents, guardian, or other custodian at least three days before the hearing." Code Ann. § 24A-2501 (a,2). See also D. M. N. v. State, 129 Ga. App. 165 (199 SE2d 114) where our court spelled out in detail the various prescribed conditions which must be complied with before the juvenile court may transfer the case to the superior court.
The writer is respectfully in disagreement with the majority's position that the cases of J. E. v. State of Ga., 127 Ga. App. 589 (194 SE2d 288) and Mathis v. State, 231 Ga. 401 (5) (202 SE2d 73) are controlling upon the present appeal. J. E. v. State, supra, was concerned only with the provisions of the 1971 Act, pp. 709-757. It was decided prior to and without reference to the 1972 Constitutional Amendment and the 1973 Amendments to the Juvenile Code and therefore did not take these legislative changes into consideration.
The Supreme Court in Mathis v. State, supra, made no mention of the 1973 statutory changes which were based upon the Constitutional Amendment. The Supreme Court there dealt primarily with the contention that "the superior court did not have jurisdiction to try him for the offenses charged." (P. 404). That decision ruled the superior court had constitutional jurisdiction to try the juvenile offender on felony indictments but did not undertake to declare that an indictment ousted the previously acquired jurisdiction of the juvenile court nor to explain the procedure that now must be followed since the 1973 law wherein the legislature expressly recites that the juvenile court "shall have exclusive original jurisdiction over juvenile matters and shall be the sole court for initiating action." (Ga. L. 1973, p. 883; Code Ann § 24A-301).
The writer agrees with the majority that the 1972 Constitutional Amendment does not abrogate the jurisdiction of the superior court as to juveniles. As is emphasized therein the caption of the resolution expressly provides "concurrent jurisdiction." But I do not agree with the assertion that there is a conflict between the constitutional amendment (Ga. L. 1972, p. 1544) and *108 the Act of 1973 (Ga. L. 1973, p. 882 et seq). The pertinent language of the constitutional amendment reads: "The Superior Courts shall have exclusive jurisdiction ... in criminal cases where the offender is subjected to loss of life or confinement in the penitentiary, except in the case of juvenile offenders as provided by law ..." (Emphasis supplied.) This preserved the superior court jurisdiction but also permitted concurrent original jurisdiction to be placed in the juvenile courts "in the cases of juvenile offenders as provided by law." These last four words "as provided by law" were carried out in the subsequent 1973 statute.
In undertaking to carry out the mandate given by the 1972 amendment the 1973 General Assembly stated the juvenile court "... shall have exclusive original jurisdiction over juvenile matters and shall be the sole court for initiating action." To give effect to these words, the first judicial action in dealing with a delinquent child must be taken in the juvenile court. This necessarily is the meaning of the two phrases: "exclusive original jurisdiction" and "the sole court for initiating action." Such holding does not deny the "concurrent jurisdiction" possessed by the superior courts under the 1972 constitutional amendment. That "concurrent jurisdiction" of the higher court comes into effect after the juvenile court as "the sole court for initiating action" has exercised its "exclusive original jurisdiction." It should be noted that there is an exception "when the allegation is based on a delinquent act which would be considered a crime if tried in a superior court and for which the child may be punished by loss of life or confinement for life in the penitentiary." Code Ann. § 24A-301 (1) (a).
A review of our legislative enactments since the first children's courts were established in our state in 1908 (Ga. L. 1908, pp. 1107-1112) confirms that the intent of the General Assembly was to vest exclusive original jurisdiction in our juvenile courts over any child alleged to be delinquent except in cases where the alleged delinquent act would constitute a crime if tried in superior court and for which the offender could be punished by loss of life or confinement for life in the *109 penitentiary. That history is presented in detail in the amicus curiae brief filed in the instant case and therefore need not be repeated in this dissent. See also Stubbs, The Juvenile Court Act of 1968, 5 Ga. State Bar Journal 219; Henritze, Persisting Problems of Georgia Juvenile Court Practice, 23 Mercer Law Review 341; Clark, The New Juvenile Court Code of Georgia, 7 Ga. State Bar Journal 409; and Henritze, Juvenile Law and the Juvenile Court System, 25 Mercer Law Review 169. From this legislative history and these law review articles it is clear that the intention of our lawmakers was to treat matters of juvenile delinquency as a class of conduct separate and distinct from conventional criminality.
This view is particularly confirmed in the procedures provided in the Juvenile Court Code which has been codified as Ch. 24A. After providing for exclusive original jurisdiction in the juvenile courts and providing that it "shall be the sole court for initiating action" other provisions set forth the manner in which cases shall be transferred from juvenile courts to other courts ( § 24A-2501); transfer of cases to juvenile court from other courts ( § 24A-901); detention of juveniles ( § 24A-1401 et seq.); and for the manner in which the juvenile court is to function as a court of inquiry ( § 24A-3901).
The basic idea is clear that the juvenile court is to determine initially whether children brought before it are likely subjects for rehabilitation. Where the expertise of the presiding judge indicates that the child cannot be rehabilitated then the juvenile tribunal is authorized to transfer the case to another forum. Nowhere is there an indication that the legislature intended for an indictment to be used to deprive the juvenile court of its opportunity to consider whether or not the child can be made a useful member of society.
An additional argument in support of the position expressed in my opinion results from a comparison of the provisions of Code Ann. § 24A-301 as originally enacted by the 1971 legislature with that adopted by the 1973 General Assembly. Both contained the same language that "The court shall have exclusive original jurisdiction over juvenile matters and shall be the sole court for *110 initiating action." Obviously, the lawmakers in the interim had come to the realization that without the 1972 constitutional amendment they were unable to validate their original intention of providing a separate but parallel channel for the administration of criminal complaints against young people with the juvenile court having the first opportunity to consider the case. The use of the identical 1971 language as to "exclusive original jurisdiction" including the mandatory "shall be the sole court for initiating action" in the 1973 enactment was a re-affirmation of the legislative determination for all complaints of delinquent conduct to be brought in the first instance to the juvenile court. It is there where the expertise exists for the exercise of the winnowing process by which the immature and reformable could be provided with trained supervision or in the absence thereof for the juvenile judge to transfer the offender to the concurrent superior court jurisdiction.
The factual situation in the case sub judice confirms the wisdom of the legislature in requiring that any transfer of a child from the juvenile court should be dependent upon compliance with the protective provisions provided for the juvenile. Thus the trial judge here by virtue of his judicial stance was undoubtedly better equipped to determine the appellant's rehabilitative possibilities rather than the district attorney whose duty is to prosecute all cases in the superior court without reference to whether the offender is an adult or juvenile and without consideration as to making a good future citizen out of an unfortunate malefactor.
Another fact here is that we have a juvenile jointly indicted with three adults. Whether or not the participation by the youngster in the heinous act of burning a church building was brought about by the domination and leadership of the adults over the juvenile would not be considered by the district attorney. But this is an important element which a juvenile court judge ponders in deciding if the accused can be converted into a future productive citizen by rehabilitative procedures. If the judge considers the juvenile beyond hope of redemption or if his investigation into the facts discloses *111 the superior court is the appropriate forum, the Juvenile Court Judge possesses the right to transfer jurisdiction over the offender to the concurrent jurisdiction of the superior court after compliance with the requirements set forth in Code Ann. § 24A-2501 which our court spelled out in D. M. N. v. State, 129 Ga. 165, supra.
I respectfully submit that an indictment is not the method permitted by our law to deprive the "original exclusive jurisdiction" of the juvenile court which the statute demands "shall be the sole court for initiating action" in dealing with a child accused of a criminal offense.